UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| SHANNON ARGUE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:05-cv-117 |
| | ) | |
| v. | ) | Honorable Gordon J. Quist |
| | ) | |
| MARY BERGHUIS et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.  Factual Allegations

Plaintiff is currently incarcerated in the Earnest C. Brooks Correctional Facility (LRF). In his *pro se* complaint, he sues the following LRF employees: Mary Berghuis, Warden; J. Minnerick, Grievance Coordinator; Charles Starr, Classification Director; (unknown) Munday, Resident Unit Manager; L. Peak, School Principal; (unknown) Lewis, Assistant Resident Unit Supervisor (ARUS); V. Shackleford, ARUS; D. Plunkett, prisoner services; S. D'Epifanio, staff member in Assistant Deputy Warden Programs; and John and Jane Doe employees of the Michigan Department of Corrections (MDOC), in their official and individual capacities.

Plaintiff argues that LRF staff conspired to harass and sanction him for refusing to attend General Educational Development (GED) classes in violation of his rights under the Double Jeopardy Clause of the Fifth Amendment and the Due Process Clause of the Sixth and Fourteenth Amendments.[1] Plaintiff refused to attend GED classes at LRF because he claims that he graduated from the Bear Lake School District on June 5, 1975, under its special education curriculum. Plaintiff states that the G. Robert Cotton Correctional Facility (JCF) and the St. Louis Correctional Facility (SLF) as well as the "Director's Office" at MDOC Headquarters previously verified that Plaintiff received his high school diploma from the Bear Lake School District.

Plaintiff provided LRF staff with the following documents to support his allegations: (1) a March 25, 1993, letter from Plaintiff's former teacher, William Milliron, verifying that Plaintiff completed all of the requirements for graduation; (2) Plaintiff's high school "pocket" diploma dated

---

[1]Plaintiff filed a similar action in *Argue v. Hofmeyer,* 4:02-cv-185 (W.D. Mich. October 11, 2002), *aff'd* 80 F. App'x 427 (6th Cir. Oct. 30, 2003), which this Court dismissed for failure to state a claim.

June 5, 1975; (3) a 1997 MDOC Presentence Investigation Report, which states under "Personal History" that Plaintiff completed the twelfth grade; (4) a June 22, 2002, letter from Mr. Milliron that provides that Plaintiff was a student of his; (4) 2001 Step I, Step II and Step III grievance responses for Grievance No. JCF-01-01-0130-29A, which notes that Plaintiff's file includes his high school diploma; (5) 2003 Step I, Step II and Step III grievance responses for SLF-03-07-2175-17Z, wherein MDOC staff verified Plaintiff's graduation; and (6) an August 6, 2003, letter from Michael Matesich, Bear Lake School Principal, providing that Plaintiff did graduate from Bear Lake School District in 1975 but noting that he did not know the origin of the "pocket" diploma. *See* Exs. 1-6 to Compl.

Plaintiff first argues that Defendants Starr, Berghuis, Munday, Shackelford, Peak, Minnerick, and Lewis conspired against Plaintiff by claiming that he never received a high school diploma, and that he forged all of his supporting documents, including his "pocket" diploma. Second, Plaintiff claims that the continued "re-litigation" of whether he received a high school diploma violates the Double Jeopardy Clause. Third, Plaintiff argues that Defendants and the Director's Office are retaliating against him for a prior disciplinary problem.

As a result of Plaintiff's refusal to attend GED classes, Defendants Plunkett and D'Epifanio placed Plaintiff on room confinement so that he must remain in his room while other prisoners are working or going to school. Defendants Plunkett and D'Epifanio also denied him indigent status, work detail and access to the law library until weekends. Pursuant to MDOC policy, a prisoner who has refused to accept a school assignment may be reclassified as "unemployable." *See* MICH. DEP'T OF CORR., Policy Directive 05.01.100 ¶ Y(3) (effective 1/01/01). The MDOC reclassified Plaintiff to "unemployable" on March 10, 2005. Plaintiff also has been denied indigent status due to his refusal of his school assignment. *See* MICH. DEP'T OF CORR., Policy Directive

04.02.120 ¶ (II)(A)(3) (effective 1/01/01). Without a job or indigent funds, Plaintiff is unable to obtain sufficient personal hygiene supplies or stamps. Plaintiff alleges that he is also suffering from mental anguish due to the harassment by Defendants.

For relief, Plaintiff requests monetary damages and injunctive relief, to be removed from room confinement status, and placed in a work assignment.

II.     Lack of Exhaustion of Administrative Remedies

Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El*, 215 F.3d at 642. A prisoner must make particularized averments as necessary for the district court to determine what, if any, claims have been exhausted or what has

been done in an attempt to exhaust the claims. *Id.*[2] In addition, a prisoner must specifically mention the involved parties in the grievance to make prison officials aware of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

Plaintiff's conspiracy and retaliation claims are the types of claims that may be grieved through the three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ E (effective 12/19/03) (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement"). Plaintiff argues that Defendants Starr, Berghuis, Munday, Shackelford, Peak, Minnerick, and Lewis conspired against him by refusing to acknowledge his high school education. Plaintiff filed Grievance No. LRF-05-02-0025-29A for his conspiracy claim against Defendants Starr, Berghuis, Munday, Shackelford, and Peak and appealed it to Step III. Plaintiff, however, failed to mention Defendants Minnerick and Lewis in Step I of the grievance process. Plaintiff first mentioned Defendants Minnerick and Lewis in Step II of Grievance No. LRF-05-02-0025-29A. Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Burton v. Jones*, 321 F.3d 569, 574 n.4 (6th Cir. 2003). Accordingly, Plaintiff failed to exhaust his conspiracy claim against Defendants Lewis and Minnerick.

---

[2]To assist prisoners in meeting this requirement, this court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff's complaint was filed on the form.

Plaintiff also failed to satisfy the exhaustion requirement as to his retaliation claim because he did not file any grievance asserting his claim against Defendants through the three-step prison grievance process. Therefore, his retaliation claim is unexhausted. *See Vandiver*, 2002 WL 31166925, at *2 ("[t]he exhaustion requirement would be defeated if an inmate were permitted to raise additional issues and name additional defendants in a § 1983 action that were never mentioned in the grievance."). A civil rights action containing both exhausted and unexhausted claims is subject to dismissal under the "total exhaustion" rule. *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright v. Morris*, 111 F.3d 414, 417 (6th Cir. 1997). Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Generally, the Court would dismiss this action without prejudice. However, where a complaint fails to state a claim upon which relief can be granted, the Court may dismiss the claim without first requiring the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997(e)(c)(2); *Brown*, 139 F.3d 1103-04. Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court will dismiss this action on that basis.

### III. Failure to State a Claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a

claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.  Due Process Clause

    Plaintiff claims that Defendants conspired against him by classifying him to a school assignment, denying him a work assignment, and confining him to his prison cell in violation of his due process rights, when he repeatedly has been found to have graduated from high school. To state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). In *Sandin v. Conner*, 515 U.S. 472, 486 (1995), the Supreme Court held that the only liberty interest a prisoner may protect through § 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

    Plaintiff fails to allege how his classification to a school assignment implicates his due process rights. Prisoners have no constitutional right to education. *Rhodes v. Chapman,* 452 U.S. 337, 348 (1981); *Canterino v. Wilson,* 869 F.2d 948, 952-54 (6th Cir. 1989). *See also Argue v. Hofmeyer,* 80 F. App'x 427, 429 (6th Cir. Oct. 30, 2003) (finding Plaintiff's "program classification did not rise to any level of constitutional magnitude"). The Supreme Court also has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility

or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005) (a prisoner's increase in security classification for his designation as a member of a security threat group failed to state a due process claim "because a prisoner has no constitutional right to a specific security classification"); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, *2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Plaintiff's classification to a school assignment fails to implicate his due process rights because Plaintiff does not have a constitutional right to a specific security classification.

Plaintiff also does not have a recognized liberty interest in a work assignment under the Due Process Clause. The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any

job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (no liberty interest in employment). *See also Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (holding that a prisoner's loss of job assignment is not a protected liberty interest because it does not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from his denial of a work assignment.

Finally, Plaintiff claims that being confined to his cell violates his due process rights. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum*, 427 U.S. at 225. Plaintiff was confined to his cell until 4:30 p.m., when other prisoners were working or attending school. As stated above, the Court must determine whether Plaintiff's confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" to implicate the Due Process Clause. *Sandin*, 515 U.S. at 486. In *Sandin*, the Supreme Court concluded that placement in administrative segregation for thirty days did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Id. See also Jones v. Baker,* 155 F.3d 810, 812-18 (6th Cir. 1998)(confinement in administrative segregation for two and one-half years did not constitute an atypical and significant hardship); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997). The Sixth Circuit also held in *Argue,* 80 F. App'x at 429, that Plaintiff's confinement for twenty-three

hours a day, Monday through Friday, did not impose an atypical and significant hardship in regards to his Eighth Amendment claim. *Id.* (citing *Sandin,* 515 U.S. at 484-86).

The Supreme Court, however, recently held in *Wilkinson v. Austin*, 125 S. Ct. 2384, 2389, 2394-95 (2005), that a prisoner's transfer to a "supermax" facility was sufficiently atypical to implicate the due process clause because the conditions at the "supermax" facility were far more restrictive than any other form of incarceration in Ohio, including conditions on death row. In *Wilkinson*, the Court stressed that "[u]nlike the 30-day placement in *Sandin*, placement at [the supermax prison] is indefinite," limited only by an inmate's maximum prison term, and "disqualifies an otherwise eligible inmate for parole consideration," thus potentially extending the length of his incarceration. *Id*. The differences between Plaintiff's case and *Wilkinson* are clear. First, Plaintiff is not being transferred or classified to a "supermax" facility. LRF is a Level I, II and IV facility.[3] Plaintiff's confinement, even if at a Level IV, is no where near the extreme conditions of the "supermax" facility in *Wilkinson*.[4] Plaintiff's confinement is only until 4:30 p.m. during the week and he has access to the law library on weekends. Second, Plaintiff *chooses* to be confined to his room by not participating in a school assignment. Third, Plaintiff's confinement does not affect his parole eligibility. Because Plaintiff's prison conditions are not "outside the realm of what is to be expected of prison life," *Sandin,* 515 U.S. at 485, Plaintiff fails to state a due process claim regarding his room confinement.

---

[3] The MDOC security classifications, from least to most secure, are as follows: Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130 ¶ B (effective 3/01/04).

[4] "For an inmate placed in [the supermax facility], almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room." *Wilkinson,* 125 S. Ct. at 2394-95.

As Plaintiff does not have a protected liberty interest in his classification to a school or work assignment, or to his room confinement, his Due Process Clause violations ultimately fail. Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because, "process is not an end in itself." *Olim*, 461 U.S. at 250.

### B.   Double Jeopardy

Plaintiff contends that Defendants violated the Double Jeopardy Clause by continuously re-litigating whether he received a high school diploma through the MDOC hearing process. The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended. *United States v. Wilson*, 420 U.S. 332, 344 (1975). Moreover, the Double Jeopardy Clause applies only to judicial proceedings, not to administrative proceedings. *See Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983); *Sand v. Bogan*, No. 93-2280, 1994 WL 112862, at *2 (6th Cir. Mar. 31, 1994). Grievance proceedings, which are conducted by prison authorities, i.e., the MDOC, are administrative in nature. Therefore, Petitioner's Double Jeopardy Clause claim is without merit.

### C.   Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged

in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff failed to provide any factual allegations to his retaliation claim besides that it is based on a "prior disciplinary problem." Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). Plaintiff's retaliation claim therefore fails to state a claim.

### D.    Hygiene Supplies

Plaintiff claims that he has been denied personal hygiene supplies in violation of his Eighth Amendment rights. As a result of his refusal to accept his school assignment, Plaintiff has been denied indigent status and a work assignment. *See* MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ (II)(A)(3). Without a job or indigent funds, Plaintiff claims he has been unable to buy personal hygiene supplies. The Eighth Amendment prohibits deliberate indifference to the needs of prisoners, including the basic elements of hygiene. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). Plaintiff does not allege, however, that he was completely denied the basic elements of hygiene. Because Plaintiff fails to allege that he was deprived of the "minimal civilized measure of life's necessities," he fails to state an Eighth

Amendment claim. *See Brown v. Brown*, 46 F. App'x 324, 325-26 (6th Cir. Sept. 16, 2002) (any inconvenience prisoner suffered due to his inability to purchase personal hygiene and toiletry items for several months because of unlawful hold on his account did not demonstrate a condition of confinement that fell beneath the minimal civilized measure of life's necessities); *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. Mar. 26, 2002) (prisoner who was denied indigent status because he dropped the computer class failed to state an Eighth Amendment claim arising from his inability to purchase personal hygiene products).

E.     Indigent Postage

Plaintiff also claims that he is being denied indigent postage for mail in violation of his First Amendment rights. While the state must provide some postage for indigent inmates in order to ensure their access to the courts, *see Lewis v. Casey,* 518 U.S. 343, 350-52 (1996); *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977), the First Amendment does not compel prison officials to provide indigent prisoners with free postage and materials for non-legal mail. *See Moore,* 36 F. App'x at 171 (6th Cir. Mar. 26, 2002) (citing *Hershberger v. Scaletta*, 33 F.3d 955, 956 (8th Cir. 1994)). Because Plaintiff does not claim that he is being denied postage for legal mail, he fails to state a First Amendment claim. *See also Argue,* 80 F. App'x at 429.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Dated: February 1, 2006                                  /s/ Gordon J. Quist
                                                                     GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE